**Reverse and Remanded and Opinion Filed January 29, 2020**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-00499-CV

**RENOVATION GURUS, LLC, SADLER HOLDINGS SERIES, LLC, GLAZING GURUS, LLC, ALEX SADLER, RONALD CARLSON, ROMAN ROSALES, JUSTIN WARE, AND BANK OF AMERICA, N.A., Appellants**

**V.**

**LAKE POINT ASSISTED LIVING, LLC, Appellee**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-04013**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Reichek, and Carlyle
Opinion by Justice Pedersen, III

This is an interlocutory appeal from the trial court's order granting a temporary injunction that froze a bank account belonging to appellant Renovation Gurus, LLC.[1] Appellant contends that (1) the frozen account funds were not sufficiently traced to an adequate interest of appellee Lake Point Assisted Living, LLC; (2) the contract between the parties prohibited Lake Point's obtaining a refund of contract payments in any event; and (3) it was denied due process in the injunction proceedings. We agree that the trial court abused its discretion in granting the injunction. We reverse the court's order, dissolve the temporary injunction, and remand the case for further proceedings.

---

[1] Although all appellants identified in the caption were included in the notice of appeal, that notice also stated that "[t]he interests of the other defendants do not appear to be affected by the language of the injunction order." Accordingly, our opinion addresses only the "interests" of Renovation Gurus.

**Background**

Lake Point acquired a property in Frisco, Texas and planned to have it renovated for use as a nursing home. Lake Point contracted with Renovation Gurus to perform the renovations. The original contract price was $559,628.37. That amount was to be paid over five phases: four "deposit" payments of $125,000 over the course of the renovations and a final payment of $59,628.37, which was due upon completion of the work. During the contract's term, the parties agreed in writing to a series of change orders that brought the total contract price to $719,936.53.

Disagreements arose between the parties concerning the work to be done and costs of the work; the facts regarding these developments are in dispute. But the record establishes that shortly after Lake Point made the fourth $125,000 payment, it delivered a written notice to Renovation Gurus that it was terminating the contract. The notice made a number of demands, including "[t]he immediate refund of the [fourth] $125,000.00 which was paid on January 14, 2019." Renovation Gurus did not comply with those demands.

Lake Point sued appellants alleging breach of contract, theft, and fraud. At the same time, Lake Point requested a temporary restraining order and a temporary injunction freezing all accounts belonging to Renovation Gurus and other defendants at Bank of America, including a specific account identified by number. The trial court granted the requested temporary restraining order and denied subsequent motions by the defendants to dissolve the order. Ultimately, the trial court granted Lake Point's request for the temporary injunction. The order stated in relevant part that the defendants:

> be, and hereby [are], commanded forthwith to desist and refrain from and are enjoined from removing funds or monies from the bank account of [Renovation Gurus, LLC] held by Bank of America, N.A. specifically being Account No. [x].

The order called for a $15,000 bond, and—after Lake Point posted the bond—the district clerk issued the writ.

Appellants bring this interlocutory appeal.

## Injunction Freezing a Party's Bank Account

In its first issue, Renovation Gurus argues that the trial court abused its discretion by freezing its bank account without tracing the funds to Lake Point or establishing that the frozen funds served as collateral, or some other adequate basis for connecting the funds to Lake Point. We review an order granting a temporary injunction for a clear abuse of discretion. *Henry v. Cox*, 520 S.W.3d 28, 33 (Tex. 2017). A trial court abuses its discretion when it misapplies the law to established facts. *Loye v. Travelhost, Inc.*, 156 S.W.3d 615, 619 (Tex. App.—Dallas 2004, no pet.).

A temporary injunction is proper when the applicant pleads and proves: (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Id.* When an injury is compensable through monetary damages, it is "by definition not irreparable." *See In re S. Foods Group, LLC*, No. 05-13-01348-CV, 2013 WL 5888255, at *1 (Tex. App.—Dallas Oct. 31, 2013, no pet.) (mem. op.).

Lake Point argued in its initial pleading that if Renovation Gurus' account was not frozen immediately, then

> [Appellants] will continue to remove and utilize the cash of [Lake Point] for its own or other improper uses inconsistent from the purpose for which it was paid and to otherwise harm [Lake Point] in a manner than cannot be calculated and which will be irreparable to an ongoing basis.

The pleading asserts briefly—and without explanation—that Lake Point's business reputation and goodwill will be irreparably injured absent a freezing of the account, but it goes on to assert that it can have no adequate remedy at law because:

[Lake Point] is further concerned that if a Temporary Restraining Order is not issued, cash and property of [Lake Point] will be removed.

This is the crux of the debate held in the trial court: whether the cash in the specific account to be enjoined was "the cash and property of [Lake Point]" and whether Lake Point was entitled to prevent Renovation Gurus from exercising control over the funds based on Lake Point's claims of breach of contract, fraud, and theft. [2] It was Lake Point's burden to establish that absent freezing the account it would suffer an injury that could not be adequately remedied by monetary damages. *See Butnaru*, 84 S.W.3d at 204.

Lake Point's efforts to meet that burden necessitate discussion of the longstanding rule forbidding a trial court to issue an injunction freezing a defendant's assets in order to assure the satisfaction of a possible future judgment. We addressed this rule recently, concluding that "the ancient and controlling rule forecloses resort to injunctive relief simply to sequester a source of funds to satisfy a future judgment." *RWI Constr., Inc. v. Comerica Bank*, 583 S.W.3d 269, 277 (Tex. App.—Dallas 2019, no pet.). In this case Lake Point has only claims, not a judgment representing resolution of those claims. Accordingly, the general rule would prohibit granting an injunction merely to prevent Renovation Guru from withdrawing the funds in the relevant account. *Id.*

Lake Point correctly points out that *RWI* also addresses an exception to this rule:

That general rule would not control where there is a logical and justifiable connection between the claims alleged and the acts sought to be enjoined, or where the plaintiff claims a specific contractual or equitable interest in the assets it seeks to freeze.

*Id.* In support of this statement, we cited *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 310 (1999) (distinguishing transfer of assets in which lien or equitable

---

[2] Given the parties' framing of the injury and remedy issues below as matters of the ownership of the funds in the relevant account, we reject Lake Point's assertion that Renovation Gurus did not preserve its complaint concerning failure to establish irreparable injury or the lack of an adequate remedy at law.

interest is claimed) and *Texas Black Iron, Inc. v. Arawak Energy International Ltd.*, 527 S.W.3d 579, 587 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (distinguishing transfer of specific assets at issue, drilling equipment that had been returned to seller and was necessary to prove mitigation of claim).

The facts and resolution of *RWI* clarify both the general rule and its exception. In that case, RWI entities defaulted on a loan from Comerica Bank; the entities' accounts receivable, inventory, and other personal property served as collateral for the loan. 583 S.W.3d at 272. Lone Star Opportunities Fund V. LP guarantied the loan. *Id.* Comerica Bank filed suit and sought injunctive relief to freeze Lone Star funds that included, *inter alia*, $800,000 in RWI's accounts receivable and the product of a general capital call on Lone Star's partners. *Id.* at 277. The trial court enjoined the funds, finding that otherwise the RWI/Lone Star defendants would "receive, hide, secrete or dissipate" those funds. *Id.* at 274. We concluded that the trial court misapplied the law by freezing Lone Star's funds "simply to assure their future availability to satisfy a judgment based solely on concerns about Lone Star's future liquidity." *Id.* at 277. We reversed the temporary injunction, excepting the $800,000 of accounts receivable in which Comerica Bank held a secured interest. *Id.* at 278.

*RWI* refers to Comerica Bank's evidence that "traced" the accounts receivable as collateral for the loan. Lake Point urges that its fourth deposit payment was deposited in the named Bank of America account, and thus it has similarly "traced" the funds, entitling it to relief. In this context, "tracing" means more than merely identifying a deposit of contested funds. It means identifying an established right in the funds, or equipment, or other asset at issue. But Lake Point has not established any right to the funds in Renovation Guru's Bank of America account. Instead, this injunction mirrors the *RWI* injunction on general capital call funds, which served only the improper purpose of assuring future satisfaction of a subsequent judgment. *Id.* at 277.

Lake Point did not establish it lacked an adequate remedy at law in this case, and hence that it would suffer an irreparable injury absent injunctive relief. We conclude the trial court misapplied the law, and thus abused its discretion, by entering the temporary injunction. We sustain Renovation Guru's first issue.[3]

## Conclusion

We reverse the trial court's order granting the temporary injunction, dissolve the temporary injunction, and remand this case to the trial court for further proceedings consistent with this opinion.

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE

190499f.p05

---

[3] Given our resolution of this first issue, we need not address Renovation Gurus' second and third issues, which pose alternative grounds for opposing the temporary injunction.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RENOVATION GURUS, LLC, SADLER
HOLDINGS SERIES, LLC, GLAZING
GURUS, LLC, ALEX SADLER,
RONALD CARLSON, ROMAN
ROSALES, JUSTIN WARE, AND BANK
OF AMERICA, N.A., Appellants

On Appeal from the 134th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-19-04013.
Opinion delivered by Justice Pedersen, III.
Justices Reichek and Carlyle participating.

No. 05-19-00499-CV          V.

LAKE POINT ASSISTED LIVING, LLC,
Appellee

In accordance with this Court's opinion of this date, the order of the trial court is
**REVERSED**, the temporary injunction is **DISSOLVED**, and this cause is **REMANDED** to the
trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant RENOVATION GURUS, LLC, SADLER HOLDINGS
SERIES, LLC, GLAZING GURUS, LLC, ALEX SADLER, RONALD CARLSON, ROMAN
ROSALES, JUSTIN WARE, AND BANK OF AMERICA, N.A. recover their costs of this
appeal from appellee LAKE POINT ASSISTED LIVING, LLC.

Judgment entered this 29th day of January, 2020.